SHAMBAUGH & SON, INC. and, Koorsen Protective Service, Inc., Defendants–Appellants,

and

Abell Elevator International Inc., Non-appealing Defendant,

v.

David L. CARLISLE and Mary L. Carlisle, Plaintiffs–Appellees.

No. 02S03–0010–CV–00602.

Supreme Court of Indiana.

March 1, 2002.

Dane L. Tubergen, Hunt Suedhoff, LLP, Fort Wayne, IN, Steven J. Moss, Johnson Smith Pence & Heath LLP, Indianapolis, IN, Attorneys for Appellants.

C. Richard Marshall, Columbus, IN, Daniel A. Roby, Roby & Hood, Fort Wayne, IN, Attorneys for Appellees.

## On Petition To Transfer

DICKSON, Justice.

In this personal injury case in which the plaintiff, David Carlisle,[1] alleges injuries sustained while riding in an elevator, the trial court denied motions for summary judgment filed by defendants Shambaugh & Son, Inc., and Koorsen Protective Ser-

vice, Inc., but granted leave for an interlocutory appeal. The Court of Appeals accepted the appeal and reversed, instructing the trial court to enter summary judgment for the defendants. *Shambaugh & Son, Inc. v. Carlisle*, 730 N.E.2d 796 (Ind. Ct.App.2000). We granted transfer, 741 N.E.2d 1257 (Ind.2000), thereby automatically vacating the Court of Appeals opinion, and we now affirm the trial court.

The plaintiffs allege that David was injured when the ascending elevator that he was taking abruptly reversed directions, causing him and the wheelchair in which he was riding first to rise up off the floor and then to drop back down, whereupon he landed on the head of his walking cane, which had become lodged underneath him, causing injury. Defendant Shambaugh & Sons, Inc., the electrical contractor, wired the building during construction, and defendant Koorsen Protective Service, Inc., Shambaugh's subcontractor, supplied the fire alarm system and participated in its installation. Abell Elevator International, Inc., which did not seek summary judgment, manufactured and installed the elevator, and is the maintenance contractor.

In their joint brief, appellants Shambaugh and Koorsen claim that the trial court erred in denying their motion for summary judgment. They urge that summary judgment should have been granted based on proximate cause or *res ipsa loquitur*.

In an appeal involving summary judgment, the appealing party bears the burden of persuasion, and we assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 165 (Ind.2000).

---

1. The other plaintiff, Mary Carlisle, seeks damages for loss of consortium due to her husband David's injuries.

We analyze the issues, however, in the same way as a trial court would. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). A party seeking summary judgment must show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). The movant must designate sufficient evidence to eliminate any genuine factual issues, and once the movant has done so, the burden shifts to the nonmovant to come forth with contrary evidence. *See Butler v. City of Peru*, 733 N.E.2d 912, 915 (Ind.2000); *Cavinder Elevators, Inc., v. Hall*, 726 N.E.2d 285, 290 (Ind.2000); *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 280–81 (Ind.1994). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 858 (Ind.2000); *Nat'l City Bank v. Shortridge*, 689 N.E.2d 1248, 1250 (Ind.1997).

## Part I.

The defendants first contend that the undisputed material facts establish, as a matter of law, that no act of Koorsen or Shambaugh was the proximate cause of David Carlisle's injuries. We initially observe that, in the defendants' trial court motions for summary judgment and supporting briefs, only defendant Koorsen raises the issue of causation. This issue is asserted on appeal by the defendants' joint brief.

■ Ordinarily, the issue of proximate cause is not properly resolved by summary judgment, but is better left to the jury. *Hedrick v. Tabbert*, 722 N.E.2d 1269, 1273 (Ind.Ct.App.2000); *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 706 (Ind.Ct. App.1999); *Crull v. Platt*, 471 N.E.2d 1211,

1214–15 (Ind.Ct.App.1984). But, where there is no issue of fact disputing that the injuries could not have been reasonably foreseen due to the unforeseeability of an intervening, superseding cause, summary judgment may appropriately be entered in favor of the defendant. *Hedrick*, 722 N.E.2d at 1273; *Best Homes*, 714 N.E.2d at 706; *Crull*, 471 N.E.2d at 1214–15.

The parties agree as to a substantial body of facts in this case. When the building's fire alarm system detects a fire or potential fire, the elevators are placed in "fire service mode" whereby they would reverse direction, if necessary, proceed to a floor designated by the system, and lock the elevator doors in the open position at that floor. It was foreseeable to the defendants that a fire alarm signal would cause this intended result. Shortly before David Carlisle went to use an elevator in the basement of the building, two adjacent elevators were signaled by the fire alarm system. When they arrived at the basement, the left elevator was "captured" by the elevator electronics system, but the right elevator was not. After attempting to use the left elevator, the plaintiff entered the elevator on the right, which had just arrived at the basement. The doors closed and the elevator began to ascend. At the first floor, it stopped and opened for another passenger. As the elevator approached the second floor, it suddenly reversed direction and abruptly descended, causing the plaintiff and the wheelchair in which he was riding to rise off the elevator floor and then to drop down, colliding with the floor, resulting in his injuries when he landed on his walking cane that had fallen into the wheelchair. The elevator proceeded to the basement where the doors opened a few inches and then slammed shut, and the elevator ascended upwards to the second floor, where the doors opened and the plaintiff exited.

The defendants contend that, "[r]egardless of whether or not Shambaugh and Koorsen were negligent in the installation of the fire alarm system ... or whether or not a false fire alarm signal was transmitted to the elevator ..., no act of Shambaugh or Koorsen, whether negligent or not, was a proximate cause of any injury sustained by Carlisle." Joint Br. of Appellants at 7. At trial, the basis of Koorsen's argument was that "[t]he fire alarm equipment supplied by Koorsen was not in the chain of causation of this incident." Record at 213. In asserting its claimed lack of proximate cause, Koorsen's supporting brief presents two contentions: (1) that "even if the fire alarm system had malfunctioned ..., the system still did not have control over the elevator's movement," and (2) any chain of causation was broken by the elevator malfunction as an intervening cause unforeseeable to Koorsen. Record at 213–14. The defendants' joint brief argues that the plaintiff's injuries were proximately caused by the malfunction of the elevator and not by the defendants or the fire alarm system. Although not specifically identified in their brief, the defendants appear to be referring to two possible elevator malfunctions. One is the failure of the elevator system, once operating in fire service mode, to capture the right elevator and prevent it from ascending. The other is the elevator's manner of reversing direction and its rate of descent in fire service mode. The defendants urge that it was not reasonably foreseeable that bodily injury could result from the transmission of a fire alarm signal, whether false or real. They argue that the elevator system malfunctions were unforeseeable intervening causes of the alleged injuries.

The plaintiffs agree that the elevator in fire service mode should have been initially "captured" and "frozen" in the basement such that it would not have ascended in the first place. But they emphasize their contention that *after* the elevator left the basement, it received an *additional* false alarm signal that caused the sudden, unexpected, and unnecessary reversal of the elevator. The affidavit of the plaintiffs' expert witness asserted that before the incident there had been several incidents of brief bursts of inappropriate and undesirable electrical energy in the fire alarm system wiring that triggered false alarms causing the elevators to go into fire service mode. The expert opined that induced voltage resulting from the installation of the fire alarm system wiring in the same conduit and immediately adjacent to much higher voltage lines caused the elevators to falsely go into fire service mode. It is his opinion that the unexpected elevator directional reversal that injured David Carlisle was likely produced, in part, by "a false fire alarm signal (caused by induced voltage) sending the elevator (which was going up) into a 'fire service mode,' thereby unexpectedly reversing the elevator's upward travel and taking it down to the basement." Record at 311.

Accepting the plaintiffs' evidence, as we must for summary judgment purposes, we cannot find that the failure of the elevator system to capture the elevator severs the proximate causation element of the plaintiffs' claims. Whether the reversal of direction occurred in a normal elevator ascension or in one following the elevator system's failure to capture and hold the elevator, it was nevertheless precipitated by the false signal from the fire alarm system and produced a reversal of direction and descent foreseeable to the defendants. Even if the failure to capture constituted an intervening and superseding cause as to the initial false fire alarm that caused the elevators to go to the basement, the capture malfunction did not interrupt and sever the proximate cause re-

lation between the subsequent false alarm signal that caused the elevator to abruptly reverse direction and descend, causing the resulting injuries.

The defendants do not identify any evidence in the record, and we find none, to establish that the elevator's manner of reversal of direction and rate of descent in fire service mode was abnormal and unforeseeable. And even if it was, the record indicates that, prior to the incident in which David Carlisle was injured, there had been several previous reports of this elevator unexpectedly going into fire service mode, resulting in a sudden reversal of direction and rapid descent, causing other elevator passengers to experience a falling sensation. The defendants, as parties moving for summary judgment, have not established their lack of actual or constructive knowledge of these incidents. They have thus not shown that the elevator's operation in fire service mode severed the proximate causation connecting the second false fire alarm signal and the plaintiffs' injuries.

For these reasons, the defendants have failed to establish the absence of any material issue in the plaintiffs' claim that the defendants' acts proximately caused David Carlisle's injuries. The trial court did not err in denying summary judgment on the issue of proximate causation.

### Part II.

The defendants also contend that they are entitled to summary judgment because the plaintiffs are relying on a theory of *res ipsa loquitur* and because the uncontroverted facts establish that neither Koorsen nor Shambaugh had exclusive control over the elevator. The plaintiffs respond that, while they rely in part upon *res ipsa loquitur*, they separately assert a claim based on specific negligent acts of the defendants. The plaintiffs further oppose summary judgment by asserting that the evi-

dentiary materials present a genuine issue of fact as to whether the defendants were in exclusive control of the wiring, which was part of the injuring instrumentality and whether the defendants' negligent installation of the wiring caused a false fire alarm, thus entitling them to rely on *res ipsa loquitur*.

The plaintiffs' complaint arguably identifies two theories of recovery, specific negligence and negligence inferred from *res ipsa loquitur:*

5. That on and before October 27, 1994, Defendants had carelessly and negligently performed their installation/inspection/service/maintenance/repair work and, as a result thereof, Plaintiff was injured and damaged; that this elevator incident was one of the type that does not ordinarily occur unless the parties in control of the elevator and its mechanisms were negligent.

Record at 20. The plaintiff David Carlisle's interrogatory answers repeatedly specify that he "will be relying, *in part*, upon *res ipsa loquitur*" and upon the opinions of a named expert whose opinions will be formulated upon completion of discovery. Record at 196–201 (emphasis added).

In its motion for summary judgment, defendant Shambaugh asserts that there is no genuine issue of fact as to two issues: "Shambaugh was not responsible for the maintenance, repair, inspection, service, cleaning or any other service aspect for the elevators installed at the IUPUI SET III Building or its fire alarm system," and "a fire alarm system has no capacity to control, change or govern the speed, direction, acceleration or deceleration of elevator cars." Record at 34. Shambaugh's brief in support of motion for summary judgment begins by alleging that "the undisputed facts demonstrate that [plaintiff] has failed to show that Shambaugh care-

lessly or negligently performed any duty." Record at 90. But Shambaugh's supporting brief then proceeds to discuss the designated evidence only with respect to *res ipsa loquitur*, and does not specifically identify any evidence to establish the absence of a determinative material fact as to the plaintiffs' claims of specific negligence.

Similarly, except for the issue of causation, discussed in Part I above, and *res ipsa loquitur*, defendant Koorsen's motion for summary judgment and supporting brief similarly do not attempt to foreclose the plaintiffs' claims of specific negligence.

Because Shambaugh and Koorsen do not carry their burden as parties seeking summary judgment to eliminate any determinative factual issues as to plaintiffs' claims of specific negligence, the plaintiffs need not come forward to establish the existence of a genuine issue for trial on its theory of specific negligence. *Butler*, 733 N.E.2d at 915. The motion for summary judgment was thus improperly granted. The defendants do not argue that the trial court erred in failing to grant partial summary judgment on the issue of *res ipsa loquitur*, and we decline to address the issue.

### Conclusion

Because the defendants have not established that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law, we affirm the trial court's denial of summary judgment.

SHEPARD, C.J., and BOEHM and RUCKER, J.J., concur.

SULLIVAN, J., not participating.

J.W., Appellant–Defendant,