# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**WILLIAM R. GROTH**
Fillenwarth Dennerline Groth & Towe, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**D. LUCETTA POPE**
**JENNIFER BICKLEY HULL**
**AMY M. STEKETEE**
Faegre Baker Daniels LLP
South Bend, Indiana

**FILED**

Jan 22 2013, 9:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LULA L. JENKINS, et al., | ) |
| | ) |
| Appellants-Plaintiffs, | ) |
| | ) |
| vs. | ) No. 71A03-1206-PL-260 |
| | ) |
| SOUTH BEND COMMUNITY SCHOOL | ) |
| CORPORATION, | ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-1008-PL-163

**January 22, 2013**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Lula L. Jenkins ("Jenkins"), American Federation of State, County and Municipal Employees Council 62, and AFL-CIO Local 686 (collectively "the Union") appeal from the trial court's order entering summary judgment in favor of South Bend Community School Corporation ("SBCSC") in Jenkins and the Union's action seeking an independent determination of whether Jenkins was discharged for just cause from her position with SBCSC. On appeal, we are asked to decide if the trial court erred by granting summary judgment in favor of SBCSC instead of making an independent determination of whether Jenkins was discharged for just cause.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On September 9, 2008, SBCSC discharged Jenkins from her employment as a school bus driver for SBCSC after it was determined that she allowed a child to ride her school bus past the child's destination and into SBCSC's maintenance facility. SBCSC cited the violation of two work rules when discharging Jenkins: rule number 10 (insubordination or refusal to carry out orders) and rule number 13 (failure to meet reasonable work standards). *Appellants' App.* at 21.

SBCSC is a public school corporation which employs school bus drivers such as Jenkins, operates a vehicle maintenance facility, and among other things, provides transportation of students to and from school. SBCSC voluntarily recognized and negotiated a collective bargaining agreement ("CBA") with the Union, which represented SBCSC employee bus drivers including Jenkins. The CBA provides that SBCSC shall discipline or

discharge employees only for just cause, and the items setting forth what can constitute just cause, including those in the rules mentioned above, are enumerated in a non-exhaustive list. *Id*. at 20-21. Article 4 of the CBA sets forth the four-step grievance procedure and defines a grievance as "any controversy arising out of or over the interpretation, application, or claim of alleged violations of the provisions" of the CBA. *Id*. at 15. Article 4 further provides that "[t]he grievance and arbitration provisions of this article are an exclusive remedy. With respect to every arbitration, the decision of the arbitrator shall be advisory to the Superintendent and not binding on either party." *Id*. at 16-17.

Following Jenkins's termination by SBCSC, Jenkins and the Union filed a grievance protesting her discharge. In particular, they argued that her termination was not for just cause under the CBA. The grievance proceeded through the arbitration process. On June 11, 2009, the neutral arbitrator held a hearing on the grievance and after that hearing and briefing by the parties determined that just cause did not exist to support Jenkins's discharge. The arbitrator issued an order that SBCSC reinstate Jenkins with full back pay, benefits, and seniority. SBCSC refused to comply with the arbitrator's order to reinstate Jenkins's employment, relying instead on the provision of the CBA that the arbitrator's order was merely advisory to the SBCSC Superintendent. When SBCSC refused to reinstate her employment, Jenkins and the Union filed a complaint seeking a de novo judicial review of whether SBCSC violated the CBA by terminating her employment without just cause.

The trial court denied SBCSC's motion to dismiss the complaint for lack of subject matter jurisdiction. However, on May 10, 2012, the trial court granted SBCSC's motion for

3

summary judgment without conducting a de novo review of whether SBCSC violated the CBA by terminating Jenkins's employment without just cause. Instead, the trial court concluded that the SBCSC Superintendent was not contractually compelled to follow the advisory opinion of the arbitrator, and that SBCSC was within its contractual rights in terminating Jenkins's employment. Jenkins and the Union now appeal from this order granting summary judgment in favor of SBCSC.

## DISCUSSION AND DECISION

According to the directives of Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On review of a trial court's grant or denial of summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind. Ct. App. 1999). We must make the determination whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id*. Just as the trial court could not look beyond the evidence specifically designated to the trial court, our review is likewise so limited. *Id*.; see also Ind. Trial Rule 56(C), (H).

The party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the movant satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-movant may not rest on its pleadings, but must designate

4

specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the non-moving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002).

On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *U-Haul Int'l, Inc. v. Nulls Mach. and Mfg. Shop*, 736 N.E.2d 271, 274 (Ind. Ct. App. 2000).

We have addressed the application of Indiana's Uniform Arbitration Act ("the UAA") and have stated the following about the UAA:

> Indiana's Uniform Arbitration Act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of arbitration awards. The purpose of arbitration is to afford parties the opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation. To facilitate this purpose, judicial review of arbitration awards is very narrow in scope. We set aside an award only when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is demonstrated. A party who seeks to vacate an arbitration award under the Act bears the burden of proving the grounds to set the award aside. . . . The Uniform Arbitration Act does not declare which issues are subject to arbitration. Rather, arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law. Thus, an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits.

*Bopp v. Brames*, 677 N.E.2d 629, 631-32 (Ind. Ct. Ap. 1997) (internal citations omitted). In this appeal, however, we are not confronted with a challenge to the actions of the arbitrator,

5

but rather the actions of one of the parties, SBCSC, in declining to follow the arbitrator's award in reliance upon one of the provisions of the CBA. We are also asked to determine whether the trial court's decision not to conduct an independent review of whether just cause existed under the CBA to terminate Jenkins's employment was erroneous.

"No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Litton Fin. Printing v. NLRB*, 501 U.S. 190, 200 (1991) (quoting *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374 (1974)); *see also St. John Sanitary Dist. v. Schererville*, 621 N.E.2d 1160, 1161 (Ind. Ct. App. 1993). Generally, contractual obligations under a collective bargaining agreement cease upon termination of the agreement. *Litton*, 501 U.S. at 207. However, parties are free to agree that the terms of an expired agreement, including arbitration provisions, will remain in effect during the hiatus period between the effective dates of the old and the new collective bargaining agreement. *United Paperworkers Int'l v. Wells Badger Indus.*, 835 F.2d 701, 704 (7th Cir. 1987); *Post Tribune Publ'g, Inc. v. Am. Arbitration Assoc.*, 767 F. Supp. 935, 947 (N.D. Ind. 1991). The parties must have manifested an intent to be bound by the arbitration provision during the hiatus period. *Int'l Bhd. of Teamsters v. Pepsi-Cola*, 958 F.2d 1331, 1334-35 (6th Cir. 1992); *Cumberland Typographical Union 244 v. The Times*, 943 F.2d 401, 405 (4th Cir. 1991). Although the CBA was scheduled to expire at the end of 2006, SBCSC and the Union agreed to extend the CBA on an annual basis, and neither party disputes that it was in effect at the time of the 2008 incident leading to Jenkins's discharge.

6

In general the construction of a written contract is a question of law for the court, making summary judgment particularly appropriate in contract disputes. *City of Lawrenceburg v. Milestone Contractors, L.P.*, 809 N.E.2d 879, 883 (Ind. Ct. App. 2004), *trans. denied*. Because the interpretation of a contract presents a question of law it is reviewed *de novo* by this court. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). When a trial court has entered summary judgment in a contract dispute, implicitly it has determined either that: 1) the contract is not ambiguous or uncertain as a matter of law and the trial court need only apply the terms of the contract; or 2) the contract is ambiguous, but the ambiguity may be resolved without the aid of factual determinations. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310-11 (Ind. Ct. App. 1991) (citations omitted).

Here, Jenkins and the Union received a favorable ruling from the arbitrator who, after hearing the disputed evidence, determined that just cause did not exist for Jenkins's termination from her employment. We have held that "[o]nce a factual question is determined in arbitration, it is finally adjudicated and cannot be relitigated." *Bopp*, 677 N.E.2d at 634. The UAA sets forth the grounds upon which an award in arbitration may be vacated. Ind. Code § 34-57-2-13. SBCSC chose not to challenge the award on any of those grounds. The dispute here involves two seemingly conflicting provisions of the CBA.

On the one hand, Article 4 of the CBA sets forth the four-step grievance procedure and defines a grievance as "any controversy arising out of or over the interpretation, application, or claim of alleged violations of the provisions" of the CBA. *Appellants' App*. at 15. Article 4 further provides that "[t]he grievance and arbitration provisions of this article

7

are an exclusive remedy. With respect to every arbitration, the decision of the arbitrator shall be advisory to the Superintendent and not binding on either party." *Id*. at 16-17. The conflict between the terms is apparent in a case such as this where one party receives a favorable award, and the other party chooses to exercise the non-binding nature of the award. Furthermore, when Jenkins sought a de novo judicial review of whether just cause existed, SBCSC relied upon the CBA's "exclusive remedy" language.

Under the argument advanced by SBCSC and applied by the trial court, if non-binding arbitration is the exclusive remedy, a prevailing aggrieved party after receiving a favorable award would have no remedy, and the "exclusive remedy" in the CBA would be no remedy at all. Such a conclusion is contrary to the Indiana Constitution. Article 1, section 12 of the Indiana Constitution provides as follows:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

Moreover, the CBA provides in Article 11:

> In the event any federal or state law, government regulation or court decision conflicts with any provision of this Agreement, the provision or provisions so affected shall no longer be operative or binding on the parties, but the remaining portion of the Agreement shall continue in full force and effect.

*Id*. at 25.

A long-standing principle of contract interpretation is that a court on review must accept an interpretation of a contract that harmonizes all the various parts, so that no provision conflicts with, is repugnant to, or neutralizes any other contractual provision. *Ryan*

*v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). We must reconcile seemingly conflicting provisions to give effect to all contractual provisions. *Id.*

In this case, we conclude that the "exclusive remedy" provision of the CBA at issue here was intended to function only as an exhaustion-of-administrative-remedies provision and not as a bar to Jenkins's exercise of her right to free and open courts and their remedies. Thus, under this CBA Jenkins must proceed through the grievance procedure prior to resorting to judicial review of her claims. The advisory nature of the arbitrator's award allows the non-prevailing party, here SBCSC, to reject the award, thus triggering judicial review, either under the UAA's provisions or for a determination whether the facts found by the arbitrator support the award. Consequently, we find that the trial court erred by declining to make that determination and by entering summary judgment in favor of SBCSC. Therefore, we reverse the trial court's entry of summary judgment and remand this matter to the trial court for a determination of whether the facts found by the arbitrator constitute just cause under the CBA.

Reversed and remanded.

NAJAM, J., and MAY, J., concur.